# LAND PURCHASE AGREEMENT

HERMANN W. FREIHOFER AND
LEO T. FREIHOFER, JR., AS TRUSTEE OF THE LEO T. FREIHOFER, JR.
REVOCABLE LIVING TRUST

with

RONALD M. SCHECKTER

Date of Contract:    October 17 , 2005 (the "Effective Date")
Premises:                 Town of Unionvale Grid# 135400006660000007801730000

LAND PURCHASE AGREEMENT

AGREEMENT made this        day of October 2005 (the "Effective Date"), between HERMANN W. FREIHOFER, with an address at 28 Freihofer Lane, LaGrangeville, New York 12540 and LEO T. FREIHOFER, JR., as Trustee of the Leo T. Freihofer, Jr. Revocable Living Trust, with an address at P.O. Box 41 LaGrangeville, New York 12540 (collectively referred to herein as "Seller"), and RONALD M. SCHECKTER, with an address at P.O. Box 402 Bedford, New York 10506 ("Purchaser").

## WITNESSETH

WHEREAS, the Seller is the owner of certain real property of approximately 80.52 acres located in the Town of Unionvale, County of Dutchess and State of New York, and which is identified as Grid# 135400006660000007801730000 on the tax map of the Town of Unionvale (the "Premises"), and

WHEREAS, the Purchaser is desirous of acquiring and the Seller is desirous of selling the Premises, upon and subject to the terms and conditions set forth below,

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Seller and Purchaser hereby agree as follows:

1. SALE. Seller hereby agrees to sell and convey to Purchaser and Purchaser hereby agrees to purchase and acquire from Seller, on and subject to the terms, covenants and conditions hereinafter set forth, the Premises, described at Paragraph "2" below, including all buildings and improvements thereon each in "AS IS" condition, and all of Seller's ownership and rights, if any, in any land lying in the bed of any street, roadway, or right-of-way adjoining the Premises to the center line thereon.

2.  PREMISES.  The Premises are bounded and described as set forth in Schedule "A" annexed which is intended to describe a parcel of land shown on annexed Schedule "A-1" being a tax lot bearing number 8780173, being in size of 80.52 ± acres, and showing a common boundary with a parcel bearing tax number 587151. This sale includes all of Seller's right, title and interest in and to:

a.    any strips or gores of land adjoining the Premises;

b.    any land lying in the bed of any street, road or avenue opened or proposed, in front or adjoining the Premises, to the center line thereof;

c.    all easements, rights of way or use, privileges, licenses, permits and right to the same belonging to or appertaining to the Premises;

d.    all rights, title, and interest of the Seller in and to any unpaid award for damage to the Premises by reason of change in grade of any street.  Seller will execute to the Purchaser on the closing date all proper instruments for the conveyance of such title and assignment and collection of any such award; and

e.    all rights, title and interest of the Seller in and to the calf barn, bull barn and machinery shed that Purchaser has inspected upon the Premises and agrees to take in their respective present conditions, each "AS IS."

3.  PURCHASE PRICE.  The purchase price for the Premises (the "Purchase Price") is the sum of One Million Seven  Hundred Fifty Thousand and 00/100 ($1,750,000.00) Dollars, which shall be paid as follows:

a.    One Hundred Thousand and 00/100 ($100,000.00) Dollars (the "Deposit") shall be paid by Purchaser upon the execution of this Agreement, to the

Seller. The Purchaser shall have a Purchaser's lien on Premises in the amount of the Deposit. In the event the Contract is terminated within Seven Hundred Thirty (730) days of the Effective Date, the Purchaser shall be entitled to the return of the Deposit. The return of the deposit shall not be a personal obligation of the Seller. The lien shall be satisfied in the event of a sale of the Premises or the expiration of three years from the date of demand for the down payment, which ever shall come sooner. Interest, if any, shall accure on the deposit commencing on the first day of the third year at the rate described at Paragraph 19. In the event the Purchaser shall be required to judicially foreclosure the lien, then Purchaser shall be entitled to legally recover his legal expenses for the same. Provided the Purchaser does not elect to terminate the contract within the 730 day period provided above, the Deposit shall be non-refundable and shall be retained by Seller whether or not title closes, except in the event the failure to close is solely due to the breach by Seller of Seller's obligations under this Agreement or as set forth in Paragraph "8(c)" below. At Closing, as defined at Paragraph "5" below, the Deposit shall be applied against the Purchase Price.

b.   One Million Six Hundred Fifty Thousand and 00/100 ($1,650,000.00) Dollars shall be paid to the Seller by Purchaser at Closing by wire transfer, good certified check of Purchaser, or official check of a bank, trust company, or savings and loan association having a banking office in the State of New York, payable to the order of Seller.

4. PERMITS AND APPROVALS.

    a.    Purchaser shall prepare and submit the necessary applications to the appropriate governmental agencies, at the Purchaser's cost and expense for the subdivision or development of the Premises (the "Municipal Approvals") into not less than two hundred (200) building lots or dwelling units, each in conformity with existing municipal zoning laws, ordinances, rules and regulations (the "Zoning Law"), as may be in existence at the time the application is heard, (each lot or unit which meets each and all of these criteria shall be referred to as a "Dwelling Unit"). Seller may simultaneously apply for a re-zone of such premises in furtherance of this application.

    b.    This Agreement is subject to and contingent upon Purchaser obtaining Preliminary Subdivision Approval for not less than two hundred (200) Dwelling Units, or such lesser amount as Purchaser shall approve (the "Preliminary Approval") within One Thousand Ninety Five (1,095) days of the Effective Date (the "Approval Period"). In the event the Approval Period expires, and the Preliminary Approval has not been granted, and Purchaser has diligently pursued the Preliminary Approval, Purchaser may elect to extend the Approval Period for an additional One Hundred Eighty (180) days from the expiration date of the Approval Period (the "First Extension") on written notice to the Seller given within ten (10) days of the expiration of the Approval Period or said extension, accompanied by a payment to Seller in the sum of Fifty Thousand 00/100 ($50,000.00) Dollars, which payment shall be in consideration for the extension, and shall not be applied against the

4

Purchase Price at Closing. In the event the First Extension expires and the Preliminary Approval has not been granted, and the Purchaser has continued to diligently pursue the Preliminary Approval, the Purchaser may elect to further extend the Approval Period for one additional one hundred eighty (180) day period (the "Second Extension"), commencing upon expiration of the First Extension, accompanied by another payment of Fifty Thousand and 00/100 ($50,000.00) Dollars, which payment shall be in consideration for this Second Extension and shall not be applied against the Purchase Price at the Closing. In the event Purchaser is unable to obtain the Preliminary Approval, within two years, of the date of this Contract, the Purchaser may cancel this Contract. In the event Purchaser is unable to obtain Preliminary Approval within three years of the date of this Contract, then either party may cancel this Agreement by written notice to the other. Purchaser may, by written notice to Seller within five (5) business days of the receipt of Seller's notice of cancellation, elect to waive this condition, and proceed with the Closing, which shall be held within ten (10) days of Seller's receipt of Purchaser's notice.

c.    Preliminary Approval shall be defined to mean any act by the Town of Unionvale Town Board or Planning Board which shall approve a final lot or unit count for the premises which shall be unconditional except for Dutchess County Board of Health Approval.

d.    At the Purchaser's cost and expense, ~~and on~~ *and* 30 days *prior to closing*, ~~notice from Seller~~, Purchaser shall erect and maintain an eight-foot chain link fence along the

5

property lines of the Premises, provided that the same complies with the zoning code of the Town of Unionvale. In the event an 8' chain link fence does not meet conform to the zoning code, the fence shall be of a height and composition as similar to the specified fence as is permitted.

e.    Within one (1) year of the date of closing, Purchaser agrees to erect a monument in honor of Leo T. Freihofer, Sr. and Rosa L. Freihofer, the parents of the Sellers. The location of such monument shall be in the discretion of the Purchaser. The cost of such monument shall not exceed $500.00.

f.    There shall be no sewer plant or other buildings constructed within twenty-five (25') feet of the boundary line adjoining other property of the Seller.

g.    To the extent the Premises are benefited by an easement or other right to cross the parcel to the west now or formerly of Jabbar Masood and Shaukat Mahmood to provide access to Route 55, the Purchaser agrees to provide a revocable license to the Seller in order to provide access from the property retained by Seller to Route 55, which license shall not be revoked unless it materially interferes with the development of the Premises. Nothing in this subparagraph shall obligate Purchaser to construct any improvements or facilities to provide such access, or to convey any interest in such easement to the Sellers. A memorandum of such license shall be executed at Closing and recorded in the Dutchess County Clerk's Office, and a termination of such memorandum shall be executed at Closing and retained by Purchaser's attorney pending receipt of satisfactory evidence that the license is materially

6

interfering with Purchaser's development of the Premises.

h.    Purchaser will make its own evaluation and will not rely upon Seller concerning applicable regulations or requirements of any governmental authority or otherwise pertaining to the Premises including without limitations, zoning, buildings, traffic and environmental regulations or requirements, and the availability of sewer, water and utilities, and Seller makes no representations or warranties with respect to any of the foregoing.

i.    Purchaser will provide Seller with true and complete copies of any and all plans and documents filed and all other surveys, maps, correspondence and reports, and revisions of such materials, which concern the Purchaser's application for Municipal Approvals, or relate in any way to the Premises, as soon after submission or filing with any municipality or governmental subdivision or agency as possible. Purchaser will use its best efforts to provide Seller timely notice of each and every meeting of any municipal authority or body Purchaser is required to appear before or before whom Purchaser makes any submission concerning the Premises.

j.    Seller shall timely cooperate fully with the Purchaser, as may be reasonably required, in any and all applications, proceedings and appeals made or prosecuted by or on behalf of Purchaser in connection with and consistent with the terms of this Agreement, and Seller agrees to timely execute and deliver all documents, consents or authorizations reasonably required by any governmental authority with respect thereto. Purchaser, at Purchaser's expense, shall report in writing regularly to Seller as to the status and

7

progress of its applications, and proceedings, such reports to include copies of all plans and documents filed and all other surveys, maps, correspondence and reports received by Purchaser. Nothing contained in this subparagraph shall be construed as requiring Seller to incur any expense.

k.    The Sellers hereby grant their limited Powers of Attorney to the Purchaser to appear before the Town of Unionvale Planning Board, the Town of Unionvale Town Board, and Town of Unionvale ZBA, to make any application, including and without limitation, an application to have the Premises rezoned in a manner, which is reasonably necessary to and consistent with the development of the Premises as described at Paragraph 4B, and to take any other action reasonable necessary for such application. In the event that the Purchaser shall withdraw from this Contract, at the option of the Seller, Purchaser shall either cancel any application made or any approval granted or shall assign the right and interest in either the application or approval to the Seller. If required by Town or any other governmental agency, Seller shall execute a separate writing confirming the provisions of this paragraph.

l.    The Sellers shall not negotiate with any third party for the Sale of these Premises during the life of this Contract, except for a sale which is subject to this Contract. In the event that Sellers are approached by any third party with respect to the acquisition of these Premises, Sellers shall advise that third party that the property is under Contract and not available for sale, except subject to this contract. The Seller shall not disclose the terms of the

Contract to any third party, except an identified bona-fide Purchaser willing to purchase subject to the terms of this Contract. The breach of this provision by the Seller shall be deemed a material breach of this Contract

m.     The Purchaser, at its sole option and discretion, may elect at any time including after a final determination by a court or otherwise, to waive any or all of the contingencies and/or conditions set forth in this Agreement and close title upon ten (10) days notice to Seller.

5. CLOSING. The "Closing" means the settlement of the obligations of the Seller and Purchaser to each other under this Agreement, including the payment by Purchaser to Seller of the Purchase Price and other sums due, in the manner set forth in this Agreement, and the delivery to Purchaser of the deed referred to in Paragraph "8" herein in proper statutory form for recording so as to transfer and convey to Purchaser, fee simple ownership to the property, free of all encumbrances except as provided herein (see Paragraph "8"). The deed will contain the covenant of Seller as required by Section 13 of the Lien Law of the State of New York. The closing of title to the property will occur at the office of Seller's attorney or at another mutually agreeable location, within seventy-five (75) days of the date Purchaser receives Preliminary Approval as defined at Paragraph 4(c), provided no judical proceeding has been commenced which challenges the legality of such approval. In no event shall the closing occur later than One Thousand One Hundred Twenty Five (1125) days from the Effective Date, unless Purchaser elects to exercise the First Extension, in which event the closing shall in no event be held later than One Thousand Three Hundred Five (1,305) days from the Effective Date, and if Purchaser elects to exercise the Second Extension, the closing shall in no event be held later than One Thousand Four Hundred Eighty Five (1,485) Days from the Effective Date.

6. INSPECTION PERIOD. The Purchaser shall have a period of sixty (60) days (the

"Inspection Period") commencing on the date of this Agreement, and ending at 5:00 p.m. on the sixtieth (60th) day thereafter, to conduct a Phase I environmental audit of the Premises. In the event the Phase I environmental audit discloses the existence or possibility of hazardous contamination for which the Purchaser wishes to conduct a Phase II audit, Purchaser may elect to extend the Inspection Period for an additional sixty (60) days on written notice to the Seller given prior to the expiration of the initial Inspection Period.  In the event Purchaser is not satisfied with the results of the environmental audit, Purchaser may elect to cancel this Agreement, on written notice to the Seller, given prior to the expiration of the Inspection Period, including the extension if applicable.  In the event Purchaser elects to cancel pursuant to this Paragraph, the sums deposited with the Escrow Agent pursuant to Paragraph "3(a)," shall be returned to the Purchaser, whereupon this Agreement shall be deemed null and void, without further force or effect. Time shall be of the essence as to the time periods provided in this paragraph.

  7.  UTILITY EASEMENT.  If required by the development of the Premises in a manner consistent with the construction of 200 building lots or more, the Sellers shall deliver an easement to the Purchaser over other lands owned or controlled by them.  Such easement shall be for underground utility purposes only.  It shall be located in such a manner so as to not unreasonably interfere with the use of the property owned or controlled by the Seller and which will be encumbered by that easement.  After delivery of the easement, the Sellers shall retain the right to relocate the Utility Easement upon the following terms and conditions:

  a)  That the proposed relocation not interfere with the approved plan of development for the premises being conveyed under terms of this Contract; and

  b)  That the Sellers make application to any appropriate agency of the Town of Unionvale and the County of Dutchess for permission to relocate the same; and

    c) That such application and the expense associated with such relocation shall be solely at the expense of the Sellers.

In the event that current existing utility facilities serving the properties owned by the Sellers and adjacent to the Premises are located on the Premises, the Sellers shall retain a utility easement for such facilities. This easement shall not include any new facilities. The Purchaser shall retain the right to relocate the Sellers' Utility Easement upon the following terms and conditions:

    a) That the proposed relocation not interfere with the use of such Utility by the Sellers; and

    b) That the Purchaser make application to any appropriate agency of the Town of Unionvale and the County of Dutchess for permission to relocate the same; and

    c) That such application and the expense associated with such relocation shall be soley at the expense of the Purchaser.

8. ACCESS AND INSPECTIONS.

    a. Seller hereby grants to Purchaser its agents, servants, employees and consultants, a license to enter in and upon the Premises throughout the term of this Agreement for the purpose of inspecting the Premises, which inspections may include, but are not limited to, conducting surveys, physical inspections, tests, engineering and construction evaluation and reports, architectural study and planning, and environmental study, testing, borings and such other tests and evaluations as are reasonably required for the full and complete evaluation of the Premises and the full and complete prosecution of any applications for governmental approvals. The Purchaser agrees to conduct such inspections in such manner so as to cause a minimum of disturbance to Premises. In connection with the exercise of the license

granted to Purchaser herein, Purchaser agrees to hold Seller harmless from any loss, cost, damages, lawsuit, damage to person or property, and the cost of litigation (including attorneys' fees) caused solely by Purchaser or its agents, servants or employees in the use of said licensing. After such access, Purchaser agrees to return the Premises to substantially the same condition as prior to said access. The provisions of this paragraph shall survive the closing of title.

b.  Purchaser shall, at Purchaser's sole expense, keep and maintain a policy of commercial public liability insurance, which shall include coverage for Purchaser's actions upon the Premises during the term of this Agreement. This insurance policy shall name Seller as an additional insured and afford protection in limits of not less than $1,000,000.00 for bodily injury or death in any one accident, and not less that $500,000.00 for property damage. All insurance shall be effected under standard form policies, issued by insurers of recognized responsibility authorized to do business in the State of New York and having a national rating of A-9 or better, provided that, at Purchaser's option, such coverage may be effectuated through a blanket policy of insurance so long as the risks in respect of the Premises are separately scheduled or identified. Purchaser will deliver to Seller within seven (7) days after the Effective Date, and prior to entry onto the Premises, certificates of this insurance coverage and, not less than thirty (30) days prior to the expiration of the coverage, a certificate of the new policy accompanied by evidence reasonably satisfactory to Seller of payment of premiums therefor.

Purchaser covenants, and this insurance coverage shall include, an agreement by the insurer that the policy shall not be canceled prior to the Closing or earlier termination of this Contract.

9. APPORTIONMENTS.

a.     The Purchaser agrees to pay the real estate taxes assessed against the Premises  from October 1, 2005 through the date of the closing, or termination of this Agreement. The Sellers shall notify Purchaser's attorney of the receipt of tax bills for the Premises, which notice shall include a copy of the tax bills, along with an allocation of the tax between Seller and Purchaser, if applicable.  The Purchaser shall reimburse Seller for the real estate taxes within fifteen (15) days of the date of Seller's notice.

b.     Due to Purchaser's payment of real property taxes as provided in subparagraph "(a)" above, there shall be no apportionment of real estate taxes at Closing.  In the event that any time subsequent to the closing of title hereunder the Premises shall be prospectively charged with an assessment, penalty, interest as the result of the loss of a tax exemption whether for agriculture, veteran, senior citizen, or other exemption (which said assessment, penalty and/or interest is collectively referred to as "Roll-Back Taxes"), any such Roll-Back Taxes shall be the sole obligation of the Purchaser, provided, that the same is the result of the exercise by the Purchaser of any right under this Contract, the change in ownership to the Purchaser, or a change in use of the property which occurs after the closing date.   This provision shall survive delivery of the deed.

13

10. TITLE.

a.    If, at the date of a closing there may be any taxes or other liens or encumbrances on the Premises which may be satisfied or discharged by the payment of money ("Monetary Liens") the Seller shall be obligated to pay and discharge the same.  Seller may use a portion of the Purchase Price payable at or prior to the Closing, to satisfy the Monetary Liens, provided the Seller shall simultaneously either (a) deliver to the Purchaser at the Closing instruments in recordable form and sufficient to satisfy such Monetary Liens of record together with the cost of recording or filing said instruments; or (b) provided that the Seller has made arrangements with Purchaser's title company in advance of Closing, Seller will deposit with said title company sufficient monies, acceptable to and required by it to insure obtaining and recording such satisfactions, and the issuance of title insurance to the Purchaser free of any exception for such Monetary Liens. The Purchaser, if request is made within a reasonable time prior to the Closing, agrees to provide at the Closing separate bank or certified checks, aggregating the amount of any such Monetary Liens.  The existence of any such Monetary Liens shall not be deemed objections to title if the Seller shall comply with the foregoing requirements.

b.    Annexed hereto and made a part hereof, as Schedule "B", is a copy of a title insurance policy issued by Rombout Abstract Agency as agent for United General title insurance company which is proposed to insure the fee ownership of the Purchaser.  The Purchaser agrees to take subject to the

estate, interest, defects, objections to title, lien or encumbrances and other matters noted to be excepted and covered. Seller warrants and represents that at the time of the closing of title, Seller shall provide to the title company whatever documents are necessary to omit such exceptions as are marked omitted upon the face of Schedule "B." Seller shall provide good, marketable and insurable title at normal rates, subject to the exceptions set forth in Schedule "B." Seller shall not allow any further encumbances of title and shall deliver title at closing in a manner consistent with the annexed Schedule "B". Seller's failure to do so shall be deemed a material breach of this Contract.

11. REPRESENTATIONS OF SELLER. The Seller makes the following representations with respect to this transaction to the best of Seller's knowledge, same not to survive Closing unless specifically noted to the contrary:

    a.    There are no tenancies; written or oral, affecting the Premises, and no other persons have any right to occupy the same. No new tenancies are to be created after execution of this Agreement without Purchaser's consent.

    b.    Seller is not aware of any claims or conditions that would affect Seller's title to the Premises, or prevent Seller from conveying the quality of title described above.

    c.    Seller has the authority to enter into this Agreement and to deliver the Deed to the Premises.

    d.    Seller shall not cause any easements, restrictions of record or liens to be placed on the Premises from the Effective Date through and including the

closing date.

e.    Seller has not entered into and will not enter into any other Agreement or Option for the Premises.

f.    Seller has no actual knowledge of any environmental constraints which would create a reporting or cleanup obligation under any local, regional, state or federal environmental regulation or statute, or the presence of any hazardous substances or spills on the Premises as defined by any local, regional, state, or federal environmental regulation or statute.

g.    Seller has no actual knowledge of any threatened, anticipated, or pending eminent domain or condemnation action.

h.    Sellers shall abide by all requirements of law during the pendency of this Contract governing use, ownership, and occupancy of the Premises.

In the event Seller obtains any information that would cause the above noted statements to be untrue or incomplete, Seller agrees to immediately notify Purchaser of such state of facts.

12. FIRPTA. Seller represents and warrants to Purchaser that Seller is not a "foreign person" as defined in IRC §1445, as amended, and the regulations issued thereunder ("Code Withholding Section"). At the Closing, Seller shall deliver to Purchaser a certification stating that Seller is not a foreign person, which certification shall be in the form then required by the Code Withholding Section.

13. MORATORIUM. In the event Purchaser is unable to proceed with its applications for Municipal Approvals due to the imposition of a moratorium by a governmental agency or subdivision, including but not limited to the Town of Union Vale, or in the event that the approval process or an approval is challenged in a court proceeding which adversely impacts the ability of

Purchaser to receive the Municipal Approvals, each and all of the time periods, deadlines, and applicable dates, set forth in this Agreement shall be extended for a period equivalent to the duration of such moratorium or litigation (and Purchaser's obligations to pay real estate taxes pursuant to paragraph 31 below shall continue during any such extension). Upon Purchaser's receipt of notice from the applicable agency or governmental subdivision of the imposition and termination of a moratorium, or commencement and termination of litigation, Purchaser shall give notice of same to the Seller. In the event the extension under this provision exceeds Five Hundred and Fifty (550) Days, commencing on the 551st day and continuing through the date such moratorium or litigation terminates, Purchaser shall pay Seller interest in an amount equivalent to the prime rate as published by the Wall Street Journal plus one (1%) percent, as such rate may change from quarter to quarter, on the remaining balance of the purchase price due the Seller. Such interest shall be payable at closing.

14. PREMISES SOLD "AS IS". Purchaser has inspected the Premises and is thoroughly familiar with the physical condition thereof. Seller has not made and does not make any representations as to the physical condition thereof other than as set forth herein. Seller has not made and does not make any representations as to the physical condition, topography, drainage, or soil conditions, subdivisions, zoning, acreage, expense of operations or any other matter or thing affecting or related to the Premises except as herein specifically set forth, and Purchaser hereby expressly acknowledges that no such representations have been made, and Purchaser further acknowledges that Purchaser has inspected the Premises and agrees to take the property in its present condition "AS IS."

15. BROKER. Each party hereby represents and warrants to the other that there was no broker, finder or person acting as such in any way instrumental or having any part in bringing about this transaction, except for Rand Manning, P.O. Box 70, Hopewell Junction, NY 12533, and Seller

17

agrees to pay the real estate commission pursuant to a separate agreement, if, as and when title closes. Each party covenants and agrees to indemnify and hold the other party harmless from and against any loss, cost, damage, expense (including reasonable attorneys' fees and expenses) or liability resulting from any claims that may be made against the other by any other broker, finder or other person claiming a fee or other compensation in connection with this transaction arising from the acts of the indemnifying party. The provisions of this Paragraph shall survive delivery of the deed hereunder or the earlier termination of this Agreement.

16. CONDEMNATION.

    a.    If after the Effective Date and prior to the Closing there is a taking of less than ten percent (10%) of the Premises in eminent domain proceedings or under threat of condemnation, and such taking will not, in the reasonable opinion of Purchaser, prevent or interfere in a material way with the development of the Premises as described in Paragraph "4" above, Purchaser shall perform its obligations under this Agreement and purchase the Premises. If during such period of time there is a taking of ten percent (10%) or more of the Premises as aforesaid, or if such taking will prevent or interfere with the development of the Premises as described in Paragraph "4," Purchaser shall have the option of complying with the terms of or terminating this Agreement. If Purchaser is obligated hereunder to purchase the Premises or, if granted an option to terminate, elects not to terminate this Agreement, Purchaser shall remain obligated to perform its obligations under this Agreement, and Seller shall at the Closing deliver to Purchaser any part of the condemnation award collected by Seller and assign to Purchaser rights to any

18

part of the award not yet collected, in each case attributable to Seller's interest in the Premises.  Seller shall advise Purchase immediately upon receipt of any notice of condemnation.  In the event that Purchaser elects to proceed with Contract, Purchaser at its option and expense, shall proceed in the condemnation proceeding as the party in interest.  In that event, Seller shall assign all right and vested interest in the condemnation proceeds to the Purchaser.  In no event shall Sellers settle any condemnation claim without the consent of Purchaser which shall not be unreasonably withheld.  For the purposes of this Agreement, a taking in condemnation shall mean the vesting of fee title to any part of the Premises in a governmental entity pursuant to the exercise of the power of eminent domain or pursuant to a deed delivered in lieu or in contemplation thereof.  If this Agreement is canceled pursuant to the provisions of this Paragraph the deposit paid by the Purchaser pursuant to Paragraph "3(a)" above, together with any payments made by Purchaser for real estate taxes pursuant to Paragraph "7(a)," shall be returned to Purchaser, whereupon this Agreement shall terminate and neither party shall have any liability to or claim against the other, whether at law or in equity.  The monies to be paid to Purchaser shall be paid under the terms of Paragraph 3(a).

b.  Purchaser agrees that the election granted to Purchaser under this Paragraph to terminate this Agreement shall be conclusively waived by Purchaser and of no force or effect unless Purchaser elects to terminate this Agreement by notice to Seller and Escrow Agent within thirty (30) days after Purchaser is notified by Seller of a taking that authorizes such election, such notification

to include a specific description of the parcels to be taken and whether the taking is in fee, easement or otherwise.

17. REMEDIES UPON DEFAULT.

    a.    In the event of Purchaser's default, it is agreed by the parties that it will be impossible to determine the exact amount of Seller's damages and therefore it is agreed that Seller's sole remedy in the event of Purchaser's default shall be for the Seller to receive and retain the Deposit, along with any and all payments made in accordance with Paragraphs "4(b)" and "7," as and for liquidated damages.

    b.    In the event of Seller's default, than Purchaser may elect either

        i.    to waive such default, whereupon Purchaser shall perform all of Purchaser's obligations under this Agreement, and the Closing shall occur in accordance with the terms of this Agreement with no abatement of the Purchase Price, and no liability on the part of the Seller; or

        ii.    to terminate this Agreement, whereupon the sole liability of the Seller shall be to immediately return (and Purchaser shall be entitled to receive) the Deposit paid by the Purchaser pursuant to Paragraph "3" above, together with any payments made by Purchaser for extensions pursuant to Paragraph "4(b)," and real estate taxes pursuant to Paragraph "7," whereupon this Agreement shall terminate and neither party shall have any liability to or claim against the other, whether at law or in equity; or

iii.   to bring an action for specific performance or this Contract. Purchaser must demonstrate that he is ready willing and able to perform as a condition of seeking such relief. .

iv.   Sue for monetary damages in the event of willful default.

c.   The parties acknowledge that this Contract is made part of a judicially ordered Stipultation of  Settlement of a lawsuit which seeks specific performance by the Purchaser.  Any relief sought under this provision may be brought by application to enforce the stipulation of Settlement.

## 18. FILING OF A MEMORANDUM OF CONTRACT

18.1   A Memorandum of Contract shall be executed by the parties simultaneously with the execution of this Contract and shall be filed in the Office of the Dutchess County Clerk at the sole cost and expense of the Purchaser.

18.2   A Certificate of Cancellation of the Memorandum of Contract executed under paragraph 16.1 of this Agreement shall be executed simultaneously with the execution of this Contract. The same shall be delivered to the Seller's attorney to be held pursuant to the terms of this provison.

18.3   In the event of Purchaser's default, whereby the Seller shall become entitled to the release of the down payment as a result of the Purchaser's default under the provisions of this Contract, or Purchaser's inability to obtain the permits and approvals as specified under Paragraph "4," or otherwise, then, on five (5) days written notice to Purchaser's attorney, the escrow agent shall cause the Certificate of Cancellation to be filed in the Office of the Dutchess County Clerk.

19. MISCELLANEOUS.

    a.    Benefits. All of the terms and provisions of this Agreement shall be binding upon and inure to the benefit of the parties, the Seller and the Purchaser, and their respective successors and assigns.

    b.    Entire Agreement. This Agreement and the Schedules and Exhibits hereto contain the entire Agreement between the Purchaser and the Seller with respect to the transactions contemplated herein; and no party shall be bound by nor shall be deemed to have made any representations, warranties or covenants except those contained herein. This Agreement cannot be modified, changed, discharged or terminated except by an instrument in writing, signed by the party against whom the enforcement or any modification, change, discharge or termination is sought.

    c.    Captions. The captions of the paragraphs and subparagraphs of this Agreement are for convenience and reference only, and are not to be considered in construing this Agreement.

    d.    Notices. Any notices, request, instrument or other document to be given hereunder shall be in writing and, shall be delivered personally or sent by certified, registered or express mail, return receipt requested, as follows:

| | |
|---|---|
| If to the Purchaser: | Ronald M. Scheckter<br>P.O. Box 402<br>Bedford, NY 10506 |
| with a copy to: | Kenneth M. Stenger, Esq.<br>1622 Rt. 9<br>Wappingers Falls, NY 12590 |
| If to the Seller: | Hermann W. Freihofer and Leo T. Freihofer, Jr.<br>28 Freihofer Lane<br>LaGrangeville, NY 12540 |

with a copy to:             Rider, Weiner & Frankel, P.C.
                               Attention: Charles E. Frankel, Esq.
                               655 Little Britain Road
                               New Windsor, NY 12553

Each party may change its address for the purposes of this Paragraph by giving written notice of such change to the other party in the manner herein provided. If this Agreement provides for a designated period after a notice within which to perform an act, such period shall commence on the date of receipt or tender of the notice. If this Agreement requires the exercise of a right by notice on or before a certain date or within a designated period, such right shall be deemed exercised on the date of mailing or tender of the notice pursuant to which such right is exercised.

e.    Severability. In case any one or more of the provisions or parts of a provision contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other provision or part of a provision of this Agreement.

f.    Invalidity of Certain Provisions. If any provision of this Agreement shall be invalid or unenforceable, the remaining provisions of this Agreement shall not be affected thereby and every provision of this Agreement shall be enforceable to the fullest extent permitted by law.

g.    Governing Law. This Agreement has been negotiated and executed in the State of New York and shall be governed by and construed in accordance with the laws of the State of New York.

h.    No Waiver. The failure of Seller or Purchaser to seek redress for violation of, or to insist on the strict performance of, any term, covenant or condition of

this Agreement, shall not be deemed a waiver of any such party's rights hereunder nor prevent a similar subsequent act from constituting a default under this Agreement.

i.   Counterparts.   This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

j.   Expenses. Each of the Purchaser and the Seller shall pay its respective legal, accounting and other fees in connection with this Agreement, including expenses incurred in connection with the purchase of the real property.

k.   Assignment.   The Purchaser shall have the right to assign this Contract to any third party without the consent of the Seller.   Notwithstanding the foregoing, to the extent that the assignment shall provide for the payment, or non-contingent entitlement of payment, to the Purchaser prior to the expiration of the two year period described at Paragraph 3(a), the down payment paid under such Paragraph 3(a) shall become non-refundable. By way of example, if, under these conditions, Purchaser receives $40,000.00, $40,0000.00 of the Contract desposit shall become non-refundable.

l.   Merger.  Seller is not liable or bound in any manner by express or implied warranties, guaranties, promises, statements, representations or information pertaining to the Premises, made or furnished by any agent, employee, servant, or other person representing or purporting to represent the Seller, unless such warranties, guaranties, promises, statements, representations or information are expressly and specifically set forth herein.  It is understood and agreed that all understandings and Agreements heretofore had between the parties hereto are merged in this Agreement, which alone fully and

24

completely expresses their Agreement, and that the same is entered into after full investigation, neither party relying upon any statement or representation, not embodied in this Agreement, made by the other.

m.  This Contract shall be deemed incorporated, but not merged, into the Stipulation of Settlement to which it is attached.

IN WITNESS WHEREOF, the parties have duly executed this Agreement as of the day and year first above written.

Seller:

_____        _____
Hermann W. Freihofer            Leo T. Freihofer

_____
Leo T. Freihofer, Jr., as Trustee of the Leo T.
Freihofer, Jr. Revocable Living Trust

Purchaser:

_____
Ronald M. Scheckter

Freihofer Kre2a.doc
CEF
2254.2

9/1/2005

25

SCHEDULE "B"

PERMITTED EXCEPTIONS

1.    Current taxes not yet due and payable.

2.    Any state of facts which an accurate survey would show.

3.    Any laws, regulations or ordinances (including, but not limited to zoning, building and environmental protection) as to use, occupancy, subdivision or improvement of the Premises adopted or imposed by any governmental body, or the effect of any noncompliance or violation thereof.

4.    Any special assessment affecting the property.

5.    Riparian rights of others in and to the uninterrupted flow of any brooks or streams crossing the Premises.

6.    Easements, covenants, restrictions and rights-of-way of record, provided same (a) are not presently violated, (b) do not provide that the Premises would be forfeited if they were violated, and (c) do not prohibit or materially interfere with the use of the Premises for a two hundred (200) lot subdivision and improvement.

7.    The rights of utility companies to maintain pipes, poles, cables, and wires over, on and under the street or the part of the Premises within thirty (30') feet of any abutting public street.

SCHEDULE A

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of Unionvale, in the county of Dutchess and State of New York, bounded and described as follows:

BEGINNING at the southeast angle of intersection of the LaGrangeville-Clove County Highway and the Billings-Poughquag State Clove Road south 81 degrees 45' east 7 chains 90 links; thence south 85 degrees each 13 chains 40 links; thence south 67 degrees 30' east 2 chains; thence South 59 degrees 30' east 4 chains; thence south 82 degrees 45' east 2 chains; thence north 85 degrees 45' east 1 chain 95 links to a fence post in the stonewall; thence north 66 degrees 15' east 3 chains 91 links; thence north 81 degrees 45' east 2 chains 32 links; thence still along the south side of the road south 84 degrees 15' east 14 chains 13 links to Bruzgul's line; thence along Bruzgul's line south 16 degrees 15' west 6 chains 83 links to a corner in the stonewall; thence south 68 degrees 30 east 5 chains 17 links; thence south 84 degrees 45' east 7 chains 98 links; thence south 7 degrees 15' west 18 chains 87 links to the northeast corner of DeForest's farm; thence along DeForest's north line and along the land of Acken north 81 degrees 30' west 53 chains 69 links to the east line of the Billings-Poughquag State Highway; thence along the east line of the State Highway north 24 degrees 30' west 2 chains 4 links to a concrete post; thence north 22 degrees west 4 chains 96 links to a concrete post; thence north 9 degrees west 3 chains 14 links; thence north 4 degrees 45' west 1 chain 61 links; thence north 7 degrees 15' west 9 chains 53 links to a concrete post; thence north 2 degrees 15' east 4 chains 97 links to the place of beginning, containing 143.75 acres of land to be the same more or less.

Excepting and reserving all that certain piece or parcel of land situate in the Town of Unionvale, County of Dutchess, and State of New York, bounded and described as follows:

BEGINNING at a post in a corner of fences on the Southerly side of the County Road leading to Pleasant Ridge, and running thence along the wall, the line of lands of Bruzgal South 16 degrees 32' West 200.3 feet and South 15 degrees 40' west 132.3 feet; thence along other lands of the party of the first part hereto passing through a large maple tree standing on the Westerly side of said wall North 89 degrees 48' west 320.7 feet to a pipe set in the southwesterly corner of the herein described premises; thence North 2 degrees 04' West 358.5 feet to a pipe set in the fence line on the Southerly side of the above mentioned County Road thence along the same South 84 degrees 39' East 428.2 feet to the point or place of beginning, containing 2.92 acres.

Being the same premises conveyed by Herbert L. Redman and Louise Redman, his wife, to Leonard Kaplan and Edith R. Kaplan, his wife, by deed dated June 23, 1945 and recorded in the Dutchess County Clerk's Office on June 23, 1945, in Liber 627 of Deeds at Page 203.

Being the same premises conveyed by Leonard Kaplan and Edith R. Kaplan, his wife, to Leo Freihofer and Rosa Freihofer, his wife, by deed dated April 8, 1954 and recorded in the Dutchess County Clerk's Office on May 24, 1954 in Liber 859 of Deeds at Page 584.

Excepting therefrom the premises conveyed by Rosa L. Freihofer to Leo Freihofer and Margaret Freihofer, his wife by deed dated April 23, 1968 and recorded in the Dutchess County Clerk's Office in Liber 1241 of Deeds at Page 646.

Also excepting therefrom the premises conveyed by Rosa L. Freihofer to Hermann Freihofer by deed dated September 26, 1975 and recorded in the Dutchess County Clerk's Office in Liber 1415 of Deeds, at Page 675.



# UNITED GENERAL TITLE INSURANCE COMPANY

File No.:        **RAD-17966UGT**
Effective Date:  **September 28, 2005**
Prepared for:    Client of **KENNETH M. STENGER, ESQ.**

## SCHEDULE A

1.    Policy or policies to be issued

      OWNERS:                                                       $     1,600,000.00
      [X]  1992 ALTA Owners Policy
      [ ]  Other:
      Proposed Insured:

      **RONALD M. SCHECKTER**

      LOAN:                                                      $
      [ ]  1992 ALTA Loan Policy
      [ ]  Other:

      Proposed insured:

      **Contract Vendee: Ronald M. Scheckter**

2.    On the effective date hereof, the estate described herein is **Fee Simple** vested in:

      **LEO T. FREIHOFER, JR. as Trustee of the Leo Freihoffer, Jr. Trust dated August 25, 2000, Who acquired Title by Deed dated October 19 2000 and recorded December 20, 2000 in Document No. 02-2002-11525.**

3.    The land referred to in the Commitment is described below and on Schedule C attached hereto.

      Address: **1830 Bruzgul Road,**
      Town of Unionvale
      Tax Map No. 1354-6660-00-780173

*Correction deed dtd 10/17/05 correct interest in premises Herman W. Freihofer, indiv 44% Leo T. Freihofer, Jr. as trustee of the Leo Freihofer, Jr Trust 56%*

Valid as a Commitment for an ALTA Policy only if attached to a countersigned Commitment for
Title Insurance containing Schedules A, B and C with matching Commitment Numbers.

ALT COMMITMENT – Schedule A
UGT Form 151NY

# UNITED GENERAL TITLE INSURANCE COMPANY

File No. **RAD-17966UGT**

CLOSING: title is vested in _____ *same* _____

_____ by deed dated _____ and recorded in the

Dutchess County Clerk's Office. Mortgage made by grantee(s) to _____

_____ in the principal amount of $_____, by instrument dated

_____ and recorded on _____, in the Dutchess County Clerk's

Office in Liber _____ MP _____.

*Contract*

~~ASSIGNMENT OF MORTGAGE:~~

TO: ___ *Ronald  M.  Schechter* _____

Dated: _____ and recorded in the Dutchess County Clerk's Office on

_____, in Liber _____ at page _____.



Valid as a Commitment for an ALTA Policy only if attached to a countersigned Commitment for
Title Insurance containing Schedules A, B and C with matching Commitment Numbers.

ALT COMMITMENT – Schedule A
UGT Form 151NY

# UNITED GENERAL TITLE INSURANCE COMPANY

File No.: RAD-17966UGT

## SCHEDULE B

The policy or policies will contain exceptions as to the following matters and the Company will not pay any costs, attorneys' fees or expenses which arise from or by reason of the following unless the same are disposed of to the Company's satisfaction prior to or at the closing:

1. Taxes, tax liens, tax sales, water rates, sewer rents and other assessments as set forth herein.

2. Mortgages returned herein ( None ).

3. Judgments returned herein (None).

4. Any state of facts which an accurate survey might show, or survey exceptions as set forth herein.

5. Rights or claims of parties, tenants or persons in possession.

6. Covenants, conditions, restrictions, easements leases, agreements, etc., of record, as more fully set forth in the Policy.

7. Company requests that seller's conveyance herein recite the prior deed after the description of the premises being conveyed: i.e. "Being the same premises described in a Deed given by, etc."

8. Trust agreement to be submitted prior to closing.

9. Action for specific performance in Index No. 03/4802 must be disposed of record.

10. **Effective July 1, 2004 the RP5217 (E &A) recording charge will increase from $50.00 to $75.00 for Residential and Agricultural properties AND for COMMERCIAL properties from $50.00 to $165.00.**

11. Utility easement in Liber 1247 cp 827.

12. Driveway Maintenance Agreement in Liber 1896 cp 180.

13. Notes on Filed Map 9252.

14. Any state of facts an accurate survey might show.



Valid as a Commitment for an ALTA Policy only if attached to a countersigned Commitment for Title Insurance containing Schedules A, B and C with matching Commitment Numbers.

# UNITED GENERAL TITLE INSURANCE COMPANY

File No.: **RAD-17966UGT**

## MUNICIPAL DEPARTMENT SEARCHES AND STREET REPORT

Any searches or returns herein are furnished **FOR INFORMATION ONLY**. They will not be insured and the Company assumes no liability for the accuracy thereof. The **WILL NOT BE CONTINUED** to the date of closing.

Search made by the Department of Buildings:    NOT APPLICABLE

Search made by the Fire Department:    NOT APPLICABLE

Street Report:    BRUZGUL ROAD IS MAINTAINED BY DUTCHESS COUNTY

### STREET VAULTS

If the insured property is located in New York City, and if there is a street vault on or adjoining the property, we suggest that applicant investigate possible license fees owed to the City of New York. This Company **DOES NOT INSURE** the right to maintain street vaults nor does the Company insure that the vault charges have been paid.

MUNICIPAL SEARCH PAGE COMMITMENT
UGT FORM 976

# UNITED GENERAL TITLE INSURANCE COMPANY

File No.: **RAD-17966UGT**

## TAX SEARCH

### ASSESSED VALUATION:

**Assessed Valuation:**
Land Value:     **$123,600.00**

Total Value:     **$171,300.00**

Land Use Code **#240**

Dimensions: **80.52 Acres**

| | |
|---|---|
| County: | **Dutchess** |
| Municipality: | **Town of Unionvale** |
| Grid/Tax Map #: | **1354-6660-00-780173** |
| School District: | **ARLINGTON SCHOOL RECEIVER OF TAXES** |

Exemptions:   None

Town of Unionvale Tax Roll: 1830 Bruzgul Road
Property Assessed to:  LEO T. FREIHOFER, JR.

2005 STATE, COUNTY & TOWN TAXES
COVERS PERIOD FROM JANUARY 1 THROUGH DECEMBER 31.
$2,024.10 – PAID ON 2/16/05

2005/06 ARLINGTON CENTRAL SCHOOL TAXES
COVERS PERIOD FROM JULY 1 THROUGH JUNE 30.
$7,701.42 – PAID ON 10/6/05

2005/06 SCHOOL TAX A LIEN AS OF JULY 1, 2005

Our policy does not insure against taxes, water charges, sewer charges, special assessments or other like items which have not become liens up to the date of closing, or installments due after such date. Neither our tax search nor our policy covers any part of streets on which the premises to be insured abut.

If the above mentioned tax lot(s) cover more or less property than the premises under examination, this fact will be noted above. In such case, the interested parties should take the necessary steps to conform the tax map to the description to be insured.

TAX SEARCH PAGE COMMITMENT
UGT FORM 977

LIB _102_ PG _72_

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF DUTCHESS

2003 SEP 26  PM 1:42

------------------------------------------------X

RONALD M. SCHECKTER,

           Plaintiff,

-against-

                                                NOTICE OF PENDENCY

LEO FREIHOFER, JR., TRUST, LEO T. FREIHOFER,
JR., as Trustee of the Leo Freihofer, Jr., Trust, LEO T.
FREIHOFER, JR., Individually, HERMAN W.
FREIHOFER, as Trustee of the Leo Freihofer, Jr., Trust,
and HERMAN W. FREIHOFER, Individually,

Index No.:

| CLERK'S MINUTES | |
|---|---|
| 20 03 | FILE NO. 4802 |
| FEE PAID 355 | INDEXED BY |

                        Defendants.

------------------------------------------------X

    NOTICE IS HEREBY given pursuant to Article 65 of the CPLR that an action has been

commenced and is now pending in the Supreme Court, Dutchess County upon a Verified

Complaint of the above-named Plaintiff against the above-named Defendants in an action for

specific performance of a contract for real estate, more commonly known as 80.52 acres, ±

located on Bruzgul Road in the Town of Unionvale, County of Dutchess and State of New York,

and bearing tax map # 5400-6660-00-780173.

    And notice is hereby further given that the real estate affected by such action is, at the

time of the filing of this notice, located in the County of Dutchess, State of New York and

described in greater detail in Schedule "A" annexed hereto.

Dated:        September 26, 2003
               Wappingers Falls, NY

                             KENNETH M. STENGER, ESQ.
                             VERGILIS, STENGER, ROBERTS,
                             PERGAMENT & VIGLOTTI, LLP
                             Attorneys for Plaintiff
                             1136 Route 9
                             Wappingers Falls, NY 12590
                             (845) 298-2000



0320034802

<u>SCHEDULE A</u>

LIB 102 PG 73

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Town of Unionvale, in the county of Dutchess and State of New York, bounded and described as follows:

BEGINNING at the southeast angle of intersection of the LaGrangeville-Clove County Highway and the Billings-Poughquag State Clove Road south 81 degrees 45' east 7 chains 90 links; thence south 85 degrees each 13 chains 40 links; thence south 67 degrees 30' east 2 chains; thence South 59 degrees 30' east 4 chains; thence south 82 degrees 45' east 2 chains; thence north 85 degrees 45' east 1 chain 95 links to a fence post in the stonewall; thence north 66 degrees 15' east 3 chains 91 links; thence north 81 degrees 45' east 2 chains 32 links; thence still along the south side of the road south 84 degrees 15' east 14 chains 13 links to Bruzgul's line; thence along Bruzgul's line south 16 degrees 15' west 6 chains 83 links to a corner in the stonewall; thence south 68 degrees 30 east 5 chains 17 links; thence south 84 degrees 45' east 7 chains 98 links; thence south 7 degrees 15' west 18 chains 87 links to the northeast corner of DeForest's farm; thence along DeForest's north line and along the land of Acken north 81 degrees 30' west 53 chains 69 links to the east line of the Billings-Poughquag State Highway; thence along the east line of the State Highway north 24 degrees 30' west 2 chains 4 links to a concrete post; thence north 22 degrees west 4 chains 96 links to a concrete post; thence north 9 degrees west 3 chains 14 links; thence north 4 degrees 45' west 1 chain 61 links; thence north 7 degrees 15' west 9 chains 53 links to a concrete post; thence north 2 degrees 15' east 4 chains 97 links to the place of beginning, containing 143.75 acres of land to be the same more or less.

Excepting and reserving all that certain piece or parcel of land situate in the Town of Unionvale, County of Dutchess, and State of New York, bounded and described as follows:

BEGINNING at a post in a corner of fences on the Southerly side of the County Road leading to Pleasant Ridge, and running thence along the wall, the line of lands of Bruzgal South 16 degrees 32' West 200.3 feet and South 15 degrees 40' west 132.3 feet; thence along other lands of the party of the first part hereto passing through a large maple tree standing on the Westerly side of said wall North 89 degrees 48' west 320.7 feet to a pipe set in the southwesterly corner of the herein described premises; thence North 2 degrees 04' West 358.5 feet to a pipe set in the fence line on the Southerly side of the above mentioned County Road thence along the same South 84 degrees 39' East 428.2 feet to the point or place of beginning, containing 2.92 acres.

Being the same premises conveyed by Herbert L. Redman and Louise Redman, his wife, to Leonard Kaplan and Edith R. Kaplan, his wife, by deed dated June 23, 1945 and recorded in the Dutchess County Clerk's Office on June 23, 1945, in Liber 627 of Deeds at Page 203.

Case 7:07-cv-04074-SCR Document 1-21 Filed 05/23/2003 Page 1 of 1

Lake Telephone Co. , a domestic Corporation having its principal office (residence) at ........................ Hopewell Junction
New York ........................................ is hereby acknowledged, the undersigned hereby grant(s) and convey(s) unto said corpora-
tions, and each of them, their respective successors and assigns, an easement and right of way _____ feet in width across the
premises, in, upon, over, under and across the lands of the undersigned including roads and highways thereon and adjacent thereto, situated
in the Town .............. of .......... Unionvale .................. , County of ........ Dutchess .............. , State of New York.

Said easement and line shall extend from the ............. in a Terminal Road .......................................... on the North
in a southerly ............... direction .............................. or portion, 650 feet to a point ......................... on the South
Said easement granted in connection with the right to the undersigned of a portion of an
existing customer owned line, being purchased by Central Hudson to serve Leo Freihofer, Jr.
and others if necessary in the future.

The exact location of said easement and right of way is to be as determined by said corporations having regard to the origin, general
direction and destination of the lines and the requirements of said corporations.

Together with the right at all times to enter thereon and to place across thereon and to construct, reconstruct, operate and maintain thereon
and to repair, replace, renew and remove, lines of poles, cables, crossarms, wires, guys, braces, underground conduits, and all other wires,
tendrings and fixtures pertinent to the present and future needs, uses and purposes of said corporations, their respective successors, assigns
and lessees. Together with the right also to trim, cut and remove at any time such trees and other objects thereon and on adjacent property
of the undersigned, as in the judgment of said corporations, their respective successors, assigns and lessees, may interfere with, obstruct or
endanger the construction, operation or maintenance of said rights, lines and fixtures or any thereof.

Reserving unto the undersigned the right to cultivate the ground within the limits of the right of way, provided that such use of said
ground shall not interfere with, obstruct or endanger any of the rights granted as aforesaid and provided that no house or other structure
shall be erected within the limits of the right of way without the written consent of said corporations, and provided that damage to the
property owned by the undersigned caused solely by said corporations, their respective successors, assigns or lessees, in maintaining or re-
pairing said lines shall be adjusted at the expense of said corporations, their respective successors, assigns or lessees.

The provisions hereof shall inure to and bind the heirs, legal representatives, successors, assigns and lessees of the undersigned and said
corporations respectively.

Signed, sealed and delivered on ........ June 20 1966 ........................................ (L. S.)
In the presence of: ........................................................................................................ (L. S.)

........................................................ Residing at .............................................................
........................................................ ........................................................
........................................................ Town, City or Village ..................... Street
........................................................ ........................................................

INDIVIDUAL ACKNOWLEDGMENT.
STATE OF NEW YORK
County of ........................ ss.:
On this ......... day of ....................... 19..... before me, the subscriber, personally appeared
................................................................ to me personally known and known to me to be the individual(s)
described in and who executed the foregoing instrument, and _he_ (severally) duly acknowledged to me that _he_ executed the same.

........................................................ Notary Public.

CORPORATION ACKNOWLEDGMENT.
STATE OF ........................
County of ........................ ss.:
On this ......... day of ....................... in the year 19..... before me personally appeared
................................................................ to me known, who being by me duly sworn, did depose and say: that
_he_ resides at ........................................ that he is the ................... President of the ...............................
the corporation described in and which executed the above instrument; ...... he knows the seal of said corporation; that the seal affixed to said
instrument is such corporate seal; that it was so affixed by order of the board of directors of said corporation, and that he signed his name
thereto by this order.

........................................................ Notary Public.

ACKNOWLEDGMENT BY SUBSCRIBING WITNESS.
STATE OF NEW YORK
County of ........ Dutchess ........ ss.:
On this ........ 20 day of ....... June ....... 1966 before me personally came ....... Carl Freihofer Jr.
................................................................ (subscribing witness)
with whom I am personally acquainted, to me known and known by me to be the subscribing witness to the foregoing instrument, who, being
by me duly sworn, did depose and say that he resides at ....................................... that he is personally acquainted with
................................................................ and knows said person(s) to be the person(s) described in and who executed the foregoing instrument; that he, the said subscribing witness,
was present and saw said person(s) execute the same and that _he_ (severally) duly acknowledged to him the said subscribing wit-
ness, that _he_ executed the same and that he thereupon, ......................... his name as witness thereto.

........................................................ DONALD J. LEWIS ........................................
........................................................ NOTARY PUBLIC, STATE OF NEW YORK ..................
........................................................ RESIDING IN DUTCHESS COUNTY .........................
........................................................ MY COMMISSION EXPIRES MARCH 30, 1969 ........ Notary Public.

RIGHT OF WAY
No. ZE1                    Town ........
Freihofer Leo              Village
                           City

TO
Central Hudson Gas & Elec Corp

Dated      6-20-68

Map
W.O. No. 15250 E/R
Line     off York 7/676

County Clerk's Office
Received on the 29 day of July 1968
at 10 H 34 M. A.M. recorded in
Book No. 1247 of Deeds
on page .......... and examined

Later this space for Recording Officer

43343     Fee 3.50     Chg. 80

LIBER 1247 PAGE 82

RECORD AND RETURN to
CENTRAL HUDSON GAS & ELEC. CORP.

827



RECORD & RETURN TO:

Paul E. Schwerman, Esq.
4 Liberty Street
Poughkeepsie, NY 12601

TYPE OR PRINT IN BLACK ONLY

GRANTOR/MORTGAGOR
LEO T. FREISOFER, JR.

TO

HERMANN W. FREIHOFER

GRANTEE/MORTGAGEE

## DO NOT WRITE BELOW THIS LINE

RECEIVED FROM: Paul E Schwerman CHECK CASH NO FEE

INSTRUMENT TYPE
RECORDED IS: (DEED) MORTGAGE ASSIGNMENT DISCHARGE OTHER: _____

| MORTGAGE TYPES: | TAX DISTRICTS: | |
|---|---|---|
| 01 1-2 FAMILY | 01 AMENIA | 13 PLEASANT VALLEY |
| 02 COMMERCIAL | 02 BEEKMAN | 14 T/POUGHKEEPSIE |
| 03 1-6 DWELLINGS | 03 CLINTON | 15 RED HOOK |
| 04 (E) CR UNINAT PER | 04 DOVER | 16 RHINEBECK |
| 05 (NE) CR UN/NAT PER | 05 EAST FISHKILL | 17 STANFORD |
| 06 CONDOMINIUM | 06 FISHKILL | 18 UNION VALE |
| 07 HELD | 07 HYDE PARK | 19 WAPPINGER |
| 08 NO TAX / SERIAL # | 08 LAGRANGE | 20 WASHINGTON |
| 09 CORR / RE-REC / COL SEC | 09 MILAN | |
| 10 NO TAX / NO SERIAL # | 10 NORTH EAST | 30 CITY OF BEACON |
| | 11 PAWLING | 31 C/POUGHKEEPSIE |
| | 12 PINE PLAINS | 40 OTHER |

DEED # 4449

RECEIVED
— 0 —
REAL ESTATE
TT# 612-4 —
TRANSFER TAX
DUTCHESS
COUNTY

Examined By: _____
Rec.Fee 2.0
Rec.Mgmt $5.00
Total 25
5

# OF PAGES: 6

Dutchess County Clerk

| MORTGAGE | OR SUPPLEMENTAL INSTRUMENT |
|---|---|
| | Examined by |
| Rec.Fee | Serial No. |
| Rec.Mgmt $5.00 | Amt.Advanced |
| Pd. | Spec Add Tax |
| Total | Total Tax Pd's |

Affidavit filed (Y) N

FE 60

| Rec.Fee | Ad. |
|---|---|
| Rec.Mgmt $5.00 | |
| Pd. | Examined By: |
| Total | |

DUTCHESS COUNTY CLERK'S
OFFICE SS:
Recorded on July 11, 1991
at 12:45 O'Clock P M.

William R. Steinhaus
WILLIAM R. STEINHAUS
County Clerk

DUTCHESS COUNTY
CLERK'S OFFICE
RECEIVED
91 JUL 11 PM12:45

Co.C-40R

## DRIVEWAY MAINTENANCE AGREEMENT

This Agreement made this 27th day of June, 1991, between LEO T. FREIHOFER, JR. and MARGARET FREIHOFER, residing at Bruzgul Road, LaGrangeville, New York, and HERMANN W. FREIHOFER and BEATRICE FREIHOFER, residing at Box 40, Bruzgul Road, LaGrangeville, New York.

## W I T N E S S E T H

WHEREAS, LEO T. FREIHOFER, JR. and MARGARET FREIHOFER are the owners of premises located on Bruzgul Road in the Town of Unionvale, County of Dutchess and State of New York which acre is more particularly bounded and described in a document recorded in the Dutchess County Clerk's Office on April 23, 1968 in Liber 1241 of Deeds at Page 646, which property is also the subject of a consolidation Deed recorded simultaneously herewith, and

WHEREAS, HERMANN W. FREIHOFER is the owner of a certain parcel located on Bruzgul Road in the Town of Unionvale, County of Dutchess and State of New York, which parcel is more particularly bounded and described in a document recorded in the Dutchess County Clerk's Office on September 26, 1975 in Liber 1415 of Deeds at Page 675, and

WHEREAS, HERMANN W. FREIHOFER and BEATRICE FREIHOFER are the owners of a second parcel of land also located on Bruzgul Road in the Town of Unionvale, County of Dutchess and State of New York, which property is more particularly described as Lot No. 1 on a map entitled "Freihofer II Subdivision" and recorded in the Dutchess County Clerk's Office as filed map no. 9252 and on the 7th day of June, 1991, and

WHEREAS, the said map entitled "Freihofer II Subdivision" shows a macadam drive which serves the houses located on all three (3) above-mentioned parcels, and

WHEREAS, the parties hereto have decided to fix and definitely establish said macadam drive as a common driveway, and

WHEREAS, LEO T. FREIHOFER, JR. and MARGARET FREIHOFER own a right-of-way over said driveway as contained in the instrument recorded in the Dutchess County Clerk's Office in Liber 1241 of Deeds at Page 645, and HERMANN W. FREIHOFER and BEATRICE FREIHOFER own a right-of-way over said drive by virtue of the instrument recorded in the Dutchess

County Clerk's Office in Liber 1415 of Deeds at Page 645, which right-of-way shall enure to HERMANN W. FREIHOFER and BEATRICE FREIHOFER's successors and assigns, forever, and shall not be extinguished by merger, and

WHEREAS, the parties hereto desire to fix, define and assertain their rights and responsibilities, and that of their heirs and assigns, forever,

NOW, THEREFORE in consideration of the premises and of the sum of One Dollar ($1.00) by each of the parties hereto to the other in hand paid, the receipt whereof is hereby acknowledged, the parties hereto, for themselves, their successors and assigns, covenant and agree as follows:

1.    That LEO T. FREIHOFER, JR. and MARGARET FREIHOFER, their heirs and assigns forever, shall bear 30% of the expense of the maintenance, repair, upkeep and snow removal relating to the first 400 feet of the macadam drive shown on the aforementioned map, which the parties agree is 820 feet in total length.

2.    The LEO T. FREIHOFER, JR. and MARGARET FREIHOFER shall not be responsible for any portion of any expense relating to that portion of the said macadam drive which is more than 400 feet in distance from Bruzgul Road.

3.    That the portion of expenses that will be borne by LEO T. FREIHOFER, JR. and MARGARET FREIHOFER, their heirs and assigns forever, shall increase from 30% to 50% in the event that all commercial use of the first parcel above-mentioned owned by HERMANN W. FREIHOFER and BEATRICE FREIHOFER ceases. For the purposes of this Agreement, the commercial use shall deem to have ceased when the Town of Unionvale, according to its zoning laws and ordinances, shall have deemed it to have ceased, and the parties agree that at the termination thereunder by the zoning consultant, zoning enforcement officer, or other responsible official of the Town of Unionvale shall be conclusive for the purposes of this Agreement.

IT IS MUTUALLY COVENANTED AND AGREED by and between the parties to this instrument that this Agreement shall run with the land and bind the respective successors and assigns of each of the parties hereto.

IT WITNESS WHEREOF, the parties hereto have executed this Agreement the day and year first above written.

_Hermann W. Freihofer_
HERMANN W. FREIHOFER

_Leo T. Freihofer Jr._
LEO T. FREIHOFER, JR.

_Beatrice Freihofer_
BEATRICE FREIHOFER

_Margaret Freihofer_
MARGARET FREIHOFER

STATE OF NEW YORK  )
                   ) ss:
COUNTY OF DUTCHESS )

On this 27 day of June, 1991, before me personally came LEO T. FREIHOFER, JR., to me known to be the individual described in and who executed the foregoing instrument, and acknowledged that he executed the same.

_____
Notary Public

PAUL E. SCHWERMAN
NOTARY PUBLIC, State of New York
No. 4800528
Qualified in Dutchess County
Commission Expires Aug. 31, 199__


STATE OF NEW YORK  )
                   ) ss:
COUNTY OF DUTCHESS )

On this 27 day of June, 1991, before me personally came MARGARET FREIHOFER,     to me known to be the individual described in and who executed the foregoing instrument, and acknowledged that she executed the same.

_____
Notary Public

PAUL E. SCHWERMAN
NOTARY PUBLIC, State of New York
No. 4800528
Qualified in Dutchess County
Commission Expires Aug. 31, 199__


STATE OF NEW YORK  )
                   ) ss:
COUNTY OF DUTCHESS )

On this 27 day of June, 1991, before me personally came HERMANN W. FREIHOFER,     to me known to be the individual described in and who executed the foregoing instrument, and acknowledged that he executed the same.

_____
Notary Public

PAUL E. SCHWERMAN
NOTARY PUBLIC, State of New York
No. 4800528
Qualified in Dutchess County
Commission Expires Aug. 31, 199__