# FIRST AMENDMENT TO ASSIGNMENT OF CONTRACT

**THIS FIRST AMENDMENT TO ASSIGNMENT OF CONTRACT** ("First Amendment") dated this _____ day of March, 2006, by and between **RONALD A. SCHECKTER**, having a mailing address at PO Box 402, Bedford, NY 10506, as Assignor, and **TOLL BROS., INC.**, with office at 250 Gibraltar Road, Horsham, PA 19044, as Assignee.

W I T N E S S E T H:

WHEREAS, Assignor and Assignee are parties to that certain Assignment of Contract dated of even date herewith, (the "Agreement"), pursuant to which Assignor has agreed to assign to Assignee, and Assignee has agreed to accept the assignment from Assignor, of the "Contract", defined in the Agreement, in accordance with the terms and condition set forth therein; and

WHEREAS, Assignor and Assignee desire to amend the Agreement as set forth in this First Amendment to Agreement.

NOW, THEREFORE, intending to be legally bound and for and valuable consideration the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree to amend the Agreement as follows:

1. All capitalized terms used herein, unless otherwise defined, shall have the meanings set forth in the Agreement.

2. Section 4.3 is hereby amended by replacing "February 28, 2006" with "the date which is fifteen (15) days after the execution of this Agreement and the Amendment thereto" such that the due diligence period granted Buyer shall run for 15 days after the full execution of this First Amendment.

3. Section 12(d) of the Agreement is hereby amended and restated in its entirety as follows:

> (d) In the event that the parties shall proceed under Sub-paragraph (c) of this section, and in the event that Paragraph 12 (a) (v) of this section is not satisfied by the 2nd anniversary of the event of such performance, then, upon that event:
>
> i. At the option of Assignee, the two (2) year deadline may be extended by one (1) year; or
>
> ii. On thirty (30) days written notice from Assignee to Assignor, the premises shall be placed upon the open market for sale. After the payment of expected and ordinary costs of the sales transaction, the first $1,750,000 of the sales proceeds, together with an amount equal to (A) all carrying costs incurred by Assignee for the

1

        Property, including, without limitation, real estate taxes and costs of insurance, (B) all reasonable amounts paid to third party consultants in connection with the approvals for the Property, and (C) all other costs in connection with the Property or the approvals paid by Assignee in accordance with this Agreement (the $1,750,000, together with the amounts under (A), (B) and (C), collectively referred to as "Assignee's Preferred Payment"), shall be paid to the Assignee. Thereafter, the balance of the proceeds from the sale of the Property shall be allocated between the parties, with 90% of the balance of the proceeds being paid to Assignor and 10% of the balance of the proceeds being paid to Assignee.

    iii.    Assignee shall accept no offer for the sale of the Property for less than an amount equal to Assignee's Preferred Payment plus $2,750,000, with all payments due within six (6) months of its acceptance (the "Threshold Price"), provided, however, if Assignee reasonably believes that the then fair market value of the Property is less than the Threshold Price, then Assignee shall be permitted to sell the Property at a purchase price lower than Threshold Price. If Assignor disputes Assignee's determination, then provided Assignee has obtained an appraisal of the Property indicating that the then fair market value of the Property is below the Threshold Price, Assignee shall be permitted to sell the Property at a purchase price lower than Threshold Price, but no lower than 90% of the appraised value of the Property.

    iv.    In the event that the fair market value of the Property at the time the Property is placed on the market for sale is less than the amount of Assignee's Preferred Payment, Assignor shall have the right to purchase the Property from Assignee for an amount equal to the fair market value of the Property, with full payment due from Assignor within 45 days of electing to exercise such option. Assignor shall have 10 days after receiving notice from Assignee that the Property will be placed on the market for sale to send Assignee written notice that Assignor claims that the fair market value of the Property is less than Assignee's Preferred Payment and to state its intention to purchase the Property. Assignor's notice must state a fair market value of the Property at which Assignor is willing to purchase the Property. If Assignee objects to Assignor's estimate of value, then the two parties shall select a mutually acceptable appraiser to value the Property and such appraiser's finding shall be binding on the parties with respect to this Section 12(d).

    v.    In the event a Closing on the Property is required under Section 12(c) of the Agreement, then Assignor shall have the right, exercisable in writing no later than 30 days prior to the Closing under the Underlying Contract, to elect to acquire the Property in place of Assignee. In such event, the parties shall modify this Agreement to convert this Assignment Agreement to an Agreement of Sale between Assignor and Assignee on the same material terms and conditions set forth in this Assignment Agreement, provided, however, that Assignor shall have no right to terminate the Agreement of Sale so long as Assignee is diligently processing the approvals for the Property, including the litigation of any appeals challenging a denial of an approval or defending any appeals filed objecting to an

approval. In the event that Assignee determines that it cannot satisfy the approval conditions or declines to litigate the grant or denial of an approval, then Assignee can elect to terminate this Agreement, and in such event Assignee (A) shall not be entitled to any reimbursement for approval costs, (B) shall be entitled to the return of a portion of the Deposit equal to $100,000 in accordance with Section 5.2(a), and (C) Assignee shall turn over to Assignor, all engineering plans and reports obtained by Assignee in connection with the Property; and thereafter this Agreement shall be null and void.

vi. If Assignor terminates the Agreement in accordance with subsection (v) above, then Assignee shall deliver to the Assignor all right title and interest in any permit, approval or work either received or prepared by it in connection with its performance under this Agreement free and clear of the claim of interest or payment from any third party.

4. Section 13.1 of the Agreement is hereby amended to provide that Assignee shall process the approvals, at Assignee's expense and that Assignor shall not be responsible for the approval process. Assignor agrees to cooperate with Assignee, at no added expense to Assignor, in connection with the approvals. Assignee shall use diligent efforts to obtain the approvals. All references in the Agreement to Assignor's prosecution of the approvals for the Property are hereby superseded by this Amendment.

5. Section 13.2 of the Agreement is hereby amended and restated in its entirety as follows:

Notwithstanding the foregoing, should Assignee make material modifications to the land development application for a lesser density or materially different unit mix than that set forth in Section 2 hereof, and such changes are not required to accommodate engineering considerations or to comply with the municipal zoning ordinance, then Assignee shall not be entitled to a reduction in the Purchase Price below $9,660,000. The preceding sentence shall not apply to any changes and corresponding loss of Units required by an approval agency or to accommodate engineering concerns.

6. Section 13.4 is amended and restated in its entirety to read: In the event that the Assignee shall default under the terms of this Contract, then in addition to retaining the Deposit in accordance with Section 7.2, Assignee shall be required to assign to Assignor, without warranty, all engineering plans and work product obtained by Assignee from third party consultants in connection with the approvals for the Property.

7. Section 13.5 is amended to provide that Assignee shall use continuous, diligent efforts in processing the approvals for the Property.

8. All other terms and conditions of the Agreement not modified hereby shall remain unchanged and are to remain in full force and effect and unmodified hereby.

(SIGNATURES APPEAR ON THE FOLLOWING PAGE)

**IN WITNESS WHEREOF**, the parties hereto have executed Amendment as of the day and year first above written.

ASSIGNEE:
**TOLL BROS., INC.**

By: *Wayne S Patterson*
Name: Wayne S Patterson
Title: REG. PRESIDENT
Date of Execution: 3/21/06

ASSIGNOR:

By: *Ronald Scheckter* (SEAL)
Name: Ronald M. Scheckter
Date of Execution: 3/10/06

I:\mjw\amend\deerrun.amd
03/10/06 9:04AM LGL03